UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

ALAN RHEINGOLD,

               Plaintiff,                         08 CV 0084 (WCC)

   - against -

HARRISON POLICE OFFICER, J. PARRELLO
TOWN/VILLAGE OF HARRISON, DEBORAH
RHEINGOLD, a/k/a DEBORAH GIERSZEWSKI,

               Defendants..

-------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**BERNSTEIN & JAFFE, ESQS.**
**189 Montague Street, Suite 303**
**Brooklyn, New York 11201**
**(718) 875-7900**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................ i-iii

PRELIMINARY STATEMENT........................................... 1

STATEMENT OF FACTS................................................ 2

ARGUMENT.............................................................. 8

POINT I

MOTION TO DISMISS STANDARD................................... 8

POINT II

PLAINTIFF STATES VALID STATE LAW CLAIMS
AGAINST DEFENDANTS FOR FALSE ARREST,
FALSE IMPRISONMENT AND MALICIOUS
PROSECUTION AND A VALID CLAIM AGAINST
DEFENDANTS PURSUANT TO 42 U.S.C §1983 FOR
VIOLATION OF HIS CIVIL RIGHTS................................. 9

POINT III

PLAINTIFF STATES A VALID FOURTH CAUSE
OF ACTION AGAINST DEFENDANTS PURSUANT
TO 42 U.S.C §1983 FOR VIOLATION OF HIS CIVIL
RIGHTS, WHEREIN, IN ADDITION TO HIS STATE
CLAIMS, HE ALLEGES THAT HIS CIVIL RIGHTS
WERE VIOLATED BECAUSE OF HIS GENDER............. 23

CONCLUSION........................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Texas*, 378 U.S. 108, (1964)............................................ 21

*Arteaga v. State of New York*, 72 N.Y.2d 212 (1988)........................ 19

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 1996)..................... 13,20,22

*Broughton v. State*, 37 N.Y.2d 451 (1975)...................................... 13,14

*Brown v. Sears Roebuck and Co.*, 297 A.D.2d 205 (1st Dept, 2002).... 19,22

*Chance v. Armstrong*, 143 F 3d 698, 701 (2d Cir 1998)...................... 8

*Cleveland v. Caplaw Enters*, 448 F.3d 518 (2nd Cir. 2006)................. 8

*Colon v. City of New York*, 60 N.Y.2d 78 (1983)................................ 13,21

*Cooper v Parsky*, 140 F 3d 433, 440 (2d Cir. 1998)............................ 8

*Cortec Indus, Inc v. Sum Holding L.P.*, 949 F. 2d 42, (2d Cir.1991) .... 9

*Dangler v New York City Off Track Betting Corp.*, 193 F 3d 130
(2d Cir 1999)...................................................................................... 9

*De Jesus v. Sears Robuck & Co.*, 87 F 3d 65, 70 (2d Cir, 1996)........... 9

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3D 168 (2d Cir. 2004)............................................................... 9

*Gisondi v. Town of Harrison*, 72 N.Y.2d 280, 285 (1988)................... 22

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991)................. 22

*Harris v. City of New York*, 186 F. 3d 243 (2d Cir, 1999)................... 8

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006).................................. 13

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007)................... 13,21

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003)............................... 13,14

*Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003)................................ 21

*Kracht v. Town of Newburgh*, 245 A.D.2d 424, 666 N.Y.S.2d 197
(2nd Dept. 1997.................................................................................. 18

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)....... 20,21,22

*Matter of Holtzman v. Beatty*, 97 A.D.2d 79, 468 N.Y.S.2d 905
(2d Dept. 1983).................................................................................. 11

*Matter of Department of Environmental Protection of NYC v. NYS*
*Department of Environmental Protection*, 70 N.Y.2d 233 (1987)...... 11,16

*McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006)............................ 19

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)..................... 24

*Muraca v. Meyerowitz*, 2008 WL 740402 (2d Dept. 3/18/2008) ......... 11

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997)................................. 14

*Nathanson v. United States*, 290 U.S. 41 (1933)................................. 21

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005)........ 8

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996)........................... 13

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)................................... 24

*Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980)................. 10

*Perryman v. Village of Saranac Lake*, 41 A.D.2d 1080, 839 N.Y.S.2d
290 (3d Dept. 2007)............................................................................ 13

*People v. Bigelow*, 66 N.Y.2d 417 (1985)........................................ 13

*Ramos v. City of New York*, 285 A.D.2d 284, (1st Dept. 2001)............ 22

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997)....... 15,19,22

*Roswell Martin v. City of Albany*, 42 N.Y.2d 13 (1977)...................... 20,22,23

*Rothman v. Gregor*, 220 F, 3d 81 (2d Cir 2000)................................. 9

*Rothstein v. Carriere*, 373 F.3d 275 (2d. Cir. 2004)........................... 19,22

*Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007)........... 22

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995)................. 18

*Terry v. Ohio*, 392 U.S. 1 (1969)...................................................... 13

*United States v. Fisher*, 702 F.2d 372 (2d Cir. 1983)........................... 13

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)................................... 14

*Williams v. City of New York*, 800 F. Supp. 1098 (E.D.N.Y. 1992)..... 18

## STATUTES

*Federal Rules of Civil Procedure §12(b)(6)* ........................................ 8,9

*Federal Rules of Civil Procedure §12(c)* ............................................ 8

*NY Pattern Jury Instructions, Criminal Contempt in the Second*

*Degree*.............................................................................................11-12

*NY Penal Law § 215.50 (3)*.........................................................10

42 USC §1983............................................................................... 12,14

## PRELIMINARY STATEMENT

Defendants by Notice of Motion, dated February 15, 2008 seeks dismissal of Plaintiff's claims against Defendants Harrison Police Department and, P.O. J. Parrello, pursuant to Federal Rules of Civil Procedure 12 (c). At a conference held with the Court on February 15, 2008, Plaintiff consented to withdraw his claims against the Harrison Town Police Department, and accordingly, an Order was entered on February 15, 2008 by the Hon. William C. Connor, Sr. U.S.D.J. dismissing Plaintiff's claims against said defendant with prejudice.

Plaintiff Alan Rheingold commenced the within action by the filing of a Summons and Verified Complaint, (a copy of which is annexed to Defendant's Notice of Motion, as Exhibit A) against Defendants Harrison Police Officer, J. Parrello, Town/Village Of Harrison, Deborah Rheingold, a/k/a Deborah Gierszewski and the dismissed defendant in the Supreme Court, Westchester County on October 26, 2007. The Defendants Harrison Police Officer, J. Parrello, Town/Village Of Harrison were served on December 7, 2007 11and interposed their answer (a copy of which is annexed to Defendant's Notice of Motion, as Exhibit B) on or about December 27, 2007. Defendant Deborah

1

Rheingold, a/k/a Deborah Gierszewski interposed her answer (a copy of which is annexed to Defendant's Notice of Motion, as Exhibit C) on or about December 7, 202207. On January 4, 2008 Defendants Harrison Police Officer, J. Parrello and Town/Village Of Harrison filed and served a Notice of Removal of this action (a copy of which is annexed to Defendant's Notice of Motion, as Exhibit D) to the United States District Court, Southern District of New York

In his Verified Complaint, dated October 25, 2007, Plaintiff Alan Rheingold alleged a cause of action against defendants based on his false arrest and false imprisonment in his First Cause of Action, a causes of action against defendants based on the negligence and negligent hiring of the Defendants in his Second and Third Causes of Action, a cause of action against Defendants for violation of his civil rights in his Fourth Cause of Action, and a caused of action against the Defendants for malicious prosecution in his Fifth Cause of Action.

## STATEMENT OF FACTS

On Friday October 27, 2006 at approximately 9:30 P.M., Plaintiff Alan Rheingold was arrested by Defendants Harrison Police Officer, J. Parrello and Town/Village Of Harrison at his home and charged with violating NY Penal Law § 215.50 (3), based on a complaint made by Plaintiff's ex-wife, Defendant

2

Deborah Rheingold, a/k/a Deborah Gierszewski. The misdemeanor complaint,

which charged Plaintiff, a copy of which is annexed to Plaintiff's Affidavit in

Opposition as Exhibit "3". In the misdemeanor complaint, dated 10/27/06, signed

by Defendant P.O. J. Parrello, it was alleged that Plaintiff Alan Rheingold violated

the "visitation" provisions contained in a  Westchester County Family Court

Order, dated October 19, 2006, a copy of which is annexed to Plaintiff's Affidavit

in Opposition as Exhibit " 1". The aforesaid temporary order of protection

restricted Plaintiff's joint physical and custody rights of his two (2) daughters and

directed the Respondent return the children at 8:30 P.M., at the conclusion of each

visit and authorized other visits as arranged. The aforesaid Order was vague and

left out substantial components of a visitation Order, such as time and place of

pickup of Mr. Rheingold's daughters and the place of return of the children and

the person to whom the children would be returned to. By reason of the complete

lack of clarity of the Family Court Order, Plaintiff's counsel made arrangements

on October 27, 2006 for return of his two (2) daughters on October 27, 2006. The

agreement between Plaintiff and Defendant Deborah Gierszewski was reflected in

a letter dated October 27, 2006, (a copy of which is annexed to Plaintiff's

Affidavit in Opposition, as Exhibit "2") written by said Defendant's counsel, and

faxed to Plaintiff's attorneys on October 27, 2006. Such agreement recited that

3

Defendant Deborah Rheingold, a/k/a Deborah Gierszewski would drop off the
children's costumes at Plaintiff's resident at 6:30 pm, which Plaintiff's ex-wife did
and"will pick the children up from the school at 8:30 pm. As Plaintiff swears in
his Affidavit in Opposition, his ex-wife's husband Steven Gierszewski appeared at
the Halloween party at the Preston Elementary School with one of the Plaintiff's
daughter's friend at approximately 7:00 P.M. and remained at the party, and at
approximately 8:30 P.M., Mr. Rheingold delivered the children at the school to
Mr. Gierzweski, who had picked up the parties' children numerous times in the
past. Defendant  Deborah Gierszewski never showed up at the Halloween party as
per the agreement confirmed by the parties' counsel.  Plaintiff remained at the
party and observed the raffle that was taken place at 8:30 P.M. At approximately
8:35 P.M., Plaintiff received a frantic and angry call on his cell phone from his
ex-wife, stating,  that if Plaintiff did not get his daughters  home immediately,
Defendant Deborah Gierszewski would have Plaintiff arrested. Plaintiff
immediately took his daughters and drove the girl's in a torrential downpour to
their mother's home at 197 Woodside Avenue, West Harrison, NY. and  dropped
off his daughters at their mother's home at approximately 8:45 P.M. At
approximately 9:30 P.M. on the same day, two (2) police cars came to Plaintiff's
home, two (2) officers from the Harrison Town Police Department knocked on

4

Plaintiff's door, stepped into his home and one of the police officers advised him

that the police officers were at Plaintiff's home to arrest him for Criminal

Contempt for violating a Westchester Family Court Order for returning his

daughters late. Plaintiff had his attorney speak to the officers to explain the

written arrangements made with his ex-wife's attorney and then showed the

officers the Westchester Family Court Order, dated October 19, 2006, and the

letter received by his attorneys' office from his ex-wife's attorneys. Plaintiff and

his attorney both advised the police officers that the Family Court Order, dated

October 19, 2006 did not specify the location where the children were to be

returned to my ex-wife and that the temporary order permitted the parties to make

arrangements concerning Plaintiff's visits with his daughters and the arrangements

for that night were reflected in Plaintiff's ex-wife's attorney's' letter. Plaintiff

protested his innocense to the police officers and detailed the agreement with his

ex-wife and arrangements made with my ex-wife for that evening, and begged the

officer's to question, his ex-wife's attorney, and/or even his ex-wife to verify the

veracity of her attorneys' October 27, 2006 letter and begged the officers to speak

to his ex-wife's husband and other parents at his daughters' school to verify that

the Plaintiff returned his daughters to Mr. Steven Gierzweski at 8:30 P.M. that

evening.. The officers looked at Plaintiff's documents, however, they refused to

investigate the complaint made by Plaintiff's ex-wife and also refused to speak to

Plaintiff's ex-wife's attorney, Plaintiff's ex-wife or her husband.  After the police

officers read the documentation provided to them by the Plaintiff, they had some

discussion amongst themselves and the called their captain or lieutenant. The

officers then told Plaintiff that he was being arrested and had to go with them. At

that point Plaintiff's wife questioned whether a warrant was needed to arrest

Plaintiff in his home, whereupon one of the officers told her, " We know how to

do our job". Plaintiff was escorted out of his home with a police officer at each

side as his  wife and step daughters were standing by and neighbors observed him

being placed into a police car, where he was handcuffed.  Plaintiff was taken to the

Harrison Police Station, wherein he was handcuffed to a wall, and left locked in a

small cell for several hours, except for the few moments when he was being

fingerprinted. Plaintiff remained in handcuffs at the station  until after a number of

hours when I was released and given a Desk Appearance Ticket  and directed to

appear at the Justice Court, Town of Harrison on Friday November 3, 2006. As a

result of his arrest for Criminal Contempt in the Second Degree, Plaintiff was

caused to retain counsel, for which he expended $5,000.00 and appeared in

Harrison Town Court for eight (8) court appearances until the Westchester District

Attorney finally advised Judge Lust of the Harrison Town Court that they did not

oppose the dismissal of the charges against Plaintiff. On August 3, 2007 the charges against Plaintiff were dismissed. A copy of a Certificate of Disposition, verifying dismissal of the criminal charges against Plaintiff is annexed to Plaintiff's Affidavit In Opposition as Exhibit "4". While Defendants allege in their Memorandum of Law that Plaintiff failed to state in his verified complaint that the criminal complaint against Plaintiff was dismissed, said averment is in fact made in paragraph 43 of Plaintiff's Verified Complaint.

# ARGUMENT
## POINT I
### MOTION TO DISMISS STANDARD

As stated in Defendant's Memorandum of Law, citing *Cleveland v. Caplaw Enters*, 448 F.3d 518 (2nd Cir. 2006), a motion for judgment on the pleadings pursuant to *Federal Rules of Civil Procedure* §12 (c) is generally treated in a similar manner as a motion made pursuant to *Federal Rules of Civil Procedure* §12 (b) (6) Dismissal of a complaint for failure to state a claim pursuant is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief " *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96 (2d Cir. 2005), *Harris v. City of New York,* 186 F, 3d 243, 247 (2d Cir, 1999), "[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Chance v. Armstrong,* 143 F 3d 698 (2d Cir 1998) (quotation marks and citation omitted); see also, *Cooper v Parsky,* 140 F 3d 433, 440 (2d Cir. 1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assess the weight of the evidence which might be offered in

support thereof") (quotation marks and citation omitted). Nevertheless, "[a]

complaint which consists of conclusory allegations unsupported by factual

assertions fails even the liberal standard of Rule 12(b)(6). "*De Jesus v. Sears

Robuck & Co.*, 87 F 3d 65, 70 (2d Cir, 1996) (quotation marks and citations

omitted). See also, *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.

of N.Y.*, 375 F.3d 168 (2d Cir. 2004) To properly rule on a 12(b)(6) motion, the

court must accept as true all material facts alleged in the complaint, draw all

reasonable inferences in the nonmoving party's favor. See, *Harris*, 186 F. 3d at

247. Moreover, the court must limit itself to facts stated in the complaint,

documents attached to the complaint as exhibits, and documents incorporated by

reference. See, *Dangler v New York City Off Track Betting Corp.*, 193 F 3d 130

(2d Cir 1999). However, the court may also consider documents, while not

explicitly incorporated into the complaint, that "plaintiffs either possessed or knew

about and upon which they relied in bringing the suit "*Rothman v. Gregor*, 220 F

3d 81 (2d Cir 2000) (citing *Cortec Indus. Inc v. Sum Holding L.P.*, 949 F. 2d 42,

(2d Cir. 1991).

## ARGUMENT
### POINT II
**PLAINTIFF STATES VALID STATE LAW CLAIMS AGAINST
DEFENDANTS FOR FALSE ARREST, FALSE IMPRISONMENT AND**

MALICIOUS PROSECUTION AND A VALID CLAIM AGAINST DEFENDANTS PURSUANT TO 42 U.S.C §1983 FOR VIOLATION OF HIS CIVIL RIGHTS.

The Supreme Court in its landmark decision, in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980) held that the police may not cross the threshold of a suspect's home to effect a warrantless arrest absent exigent circumstances or the defendant's arrest. In the case at bar, the action of the Harrison Town Police Officers in entering Plaintiff's home to effectuate his arrest was illegal at its inception and was thereafter compounded by their false arrest, false imprisonment, the malicious prosecution of the Plaintiff and the violation of his civil rights.

In the instant case at bar, Plaintiff Alan Rheingold was arrested in his home and charged with violating *NY Penal Law § 215.50 (3)*, criminal contempt in the second degree, based on a complaint made by Plaintiff's ex-wife.

To establish the crime of criminal contempt in the second degree, there must exist a lawful order of a court clearly expressing an unequivocal mandate, and there must be an intentional violation of the order. The defendant must have a conscious objective to violate the order. When the terms of abn Order are vague and indefinite as to what actions are required or prohibited to a party, the party may not be found in contempt for failing to take the required action or

10

for taking the prohibited action. *Matter of Holtzman v. Beatty*, 97 A.D.2d 79, 468

N.Y.S.2d 905 (2d Dept. 1983), *Matter of Department of Environmental Protection*

*of NYC v. NYS Department of Environmental Protection*, 70 N.Y.2d 233 (1987).

An essential element of criminal contempt is wilful disobedience of a mandate or

order. The defendant must be shown to have violated the order with a higher

degree of wilfulness than with a civil contempt. *Muraca v. Meyerowitz*, 2008 WL

740402 (2d Dept. 3/18/2008) . Even in the case of a civil contempt, the order

alleged to have been violated, the order of the court must have clearly expressed

an unequivocal mandate of a Court with reasonable certainty.  In a criminal

proceeding the standard is greater, to wit, beyond a reasonable doubt. *Matter of*

*Department of Environmental Protection of NYC*, supra at 237.

The jury charge in *NY Pattern Jury Instructions*, *Criminal Contempt in the Second*

*Degree* reads as follows:

> "Under our law, a person is guilty of criminal contempt in the
> second degree when he or she engages in the following conduct:
> intentional disobedience or resistance to the lawful process or
> other mandate of a court.
> Some of the terms used in this definition have their own special
> meaning in our law. I will now give you the meaning of the
> following terms: "lawful process or other mandate of a court"
> and "intentional."

LAWFUL PROCESS OR OTHER MANDATE OF A COURT includes [an order of protection] [or (specify)].

A person engages in the INTENTIONAL disobedience or resistance to the lawful process or other mandate of a court when, with knowledge of such process or mandate, he or she disobeys or resists such process or mandate, and his or her conscious objective or purpose is to do so.

In order for you to find the defendant guilty of this crime, the People are required to prove, from all the evidence in the case, beyond a reasonable doubt, both of the following two elements:

1. That on or about  (date) the (specify) court issued a lawful process or  mandate, namely, [an order of protection] [or (specify) ]; and

2. That on or about (date) in the county of (specify), the defendant, (defendant's name), with knowledge of such process or mandate, engaged in intentional disobedience or resistance to it.

Therefore, if you find that the People have proven beyond a reasonable doubt  both of those elements, you must find the defendant guilty of the crime of  Criminal Contempt in the Second Degree as charged in the

_____ count.

On the other hand, if you find that the People have not proved beyond a reasonable doubt either or both of those elements, you must find the defendant not guilty of Criminal Contempt in the Second Degree, as charged in the _____ count".

Claims for false arrest, false imprisonment and malicious prosecution brought under *42 U.S.C. § 1983* are premised on an individual's right to be free from unreasonable seizures are substantially the same as false arrest and malicious prosecution claims under state law. Under New York law, while the existence of probable cause is a defense to the false arrest claim, a police officer only has

probable cause to arrest when the officer has knowledge of reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has or is committing a crime. *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006) *Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996) *Perryman v. Village of Saranac Lake*, 41 A.D.2d 1080, 839 N.Y.S.2d 290 (3d Dept. 2007) See also, *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 1996), which cites *Colon v. City of New York*, 60 N.Y.2d 78 (1983) Those facts "need not reach the level of evidence necessary to support a conviction ... but [they] must constitute more than rumor, suspicion, or even a strong reason to suspect. *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983). Mere subjective good faith on the part of the arresting officer is not enough for probable cause; if it were, the protections of the Fourth Amendment would evaporate. *Terry v. Ohio*, 392 U.S. 1 (1969). A conclusory statement from a police officer cannot serve as the basis for a finding of probable cause. *People v. Bigelow*, 66 N.Y.2d 417 (1985).

Under New York law, a plaintiff claiming false imprisonment must show that he was confined, that he was conscious of the confinement, that he did not consent to the confinement and the confinement was not justified. *Jocks v. Tavernier*, 316 F.3D 128 (2d Cir. 2003), *Broughton v. State*, 37 N.Y.2d 451

13

(1975) Claims for false arrest, false imprisonment and malicious prosecution brought under *42 U.S.C.§1983* are premised on an individual's right to be free from unreasonable seizures are substantially the same as false arrest and malicious prosecution claims under state law. Under New York law, a plaintiff claiming false imprisonment must show that he was confined, that he was conscious of the confinement, that he did not consent to the confinement and the confinement was not justified. See *Jocks* and *Broughton* infra. To succeed on a claim for malicious prosecution, a plaintiff must show that a defendant initiated a proceeding or prosecution that terminated in favor of the plaintiff, the absence of probable cause in the prior proceeding or prosecution and malice. Probable cause is also defined as, such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe that the plaintiff was guilty. In a case such as the instant case, where on its face, there are is a genuine issues regarding the existence of probable cause, the question of probable cause is to be determined by the jury, as trier of fact. *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) In a §1983 action, where there is a dispute as to the pertinent events and the knowledge of the arresting officers, the existence of probable cause is a factual question to be decided by the jury. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). In addition, once the plaintiff has raised an issue of fact regarding the existence of

14

probable cause, the issue of malice must also be submitted to the jury as the lack

of probable cause results in an inference of malice. *Ricciuti v. N.Y.C. Transit*

*Authority*, 124 F.3d 123 (2d Cir. 1997)

    The plethora of reasons, based on facts and circumstances, advanced

in Plaintiff's Verified Complaint and Plaintiff's Affidavit in Opposition why the

Harrison police Department and their officers lacked probable cause to arrest

Defendant Alan Rheingold at his home on October 27, 2007, include the

following:

i) the Westchester Family Court Order, dated October 19, 2006 failed to clearly

express an unequivocal mandate of the Court with reasonable certainty, as the

Order failed to state the location where Plaintiff Alan Rheingold was to return his

children to Defendant Deborah Gierszewski, at the conclusion of each visit with

his daughters. Accordingly, based on the uncontroverted facts advanced by

Plaintiff, it can not be shown that Plaintiff had knowledge of the mandate in the

Order, as to where  he would return the children to their mother.

ii)  Based on the vagueness of the Family Court Order, it could not be shown that

the  Plaintiff had a conscious objective or purpose to violate the Order. In fact,

despite the police officer's  doubt that the Order may not have expressed a clear

and unequivocal mandate of a Court, he nevertheless arrested the Plaintiff.

iii) In as much as an element of the crime of Criminal Contempt in the Second Degree is a wilful disobedience of an Order, requiring the specific intent to violate the Order, how, even if it is believed that Plaintiff did actually return his daughters twenty (20) minutes late to his ex-wife during a torrential downpour, could a reasonable person argue, that the Plaintiff expressed the intent to violate the Westchester Family Court Order? At trial, the Plaintiff may offer testimony, that it is a regular practice in the State of New York, for Judges to allow parents a thirty (30) minute grace period, when picking up and returning their children.

iv) A criminal contempt charge is on an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for the Court's process, not to protect a private wrong. See, *Matter of Department of Environmental Protection of NYC*, supra. Criminal contempt charges are found when the violation of and Order offends the conscience of a Court. A criminal contempt citation is punitive, unlike a civil contempt citation, which is designed to protect a private wrong. In the instant case, the arresting police officers, even, if they wrongfully believed the complaint made by ex-wife, had no information, that the return of the children twenty (20) minutes late on October 27, 2006, was anything other than an isolated incident.

v)   The Westchester Family Court Order did not specify the days that Plaintiff was allowed to visit with his daughters and expressly permitted the Plaintiff to "have other visits as arranged" Accordingly, there are two (2) bonifide arguments that a reasonable police officer should have considered, a) the Order was unclear and as such, the ambiguities in the Order were resolved by review of the October 27, 2007 letter from Plaintiff's ex-wife's counsel, which the Plaintiff gave to the arresting police officers or b) in as much as the Order expressly permitted the parties to arrange visits, the visit on October 27, 2006, was an additional visit arranged by the parties.

vi) Based on the facts and circumstances that existed on October 27, 2006, when the police officers went to Plaintiff's home, including the fact that the parties' children had been returned to Ms. Gierszewski, that Plaintiff had no criminal record, that there were no exigent circumstances, a reasonable police officer, would have conducted a limited investigation at Plaintiff's home or upon arrival at the Harrison Police Department, and contacted and confronted Ms. Gierswewski, or her attorney, as to any questions or concerns that the police officer may have had regarding the purpose, meaning and authenticity of the letter of Ursula A. Gangemi, Esq., dated October 27, 2006.

vii) Even if the Harrison police officers were not ready, able or willing to contact

17

Ms. Gierswewski, or her attorney on Friday evening October 27, 2006, a

reasonable police officer would have immediately given Plaintiff a desk

appearance ticket and conducted or ask an officer in their department to conduct

the limited investigation of speaking to Ms. Gierswewski, or her attorney, and

thereupon confirming that the Plaintiff did not violate the Westchester County

Family Court Order, would have voided Plaintiff's arrest and taken action to

facilitate the withdrawal of the criminal complaint against Plaintiff.

        Defendant's argument that probable cause was established, solely as a

result of the complaint made by Plaintiff's ex-wife. That is preposterous. Police

officers are not expected to act as robots, but must consider the creditable facts

and circumstances available to them, at the time, they are considering making an

arrest. Police offices are expected to use common sense in the discharge of their

duties. Defendant's reliance on the *Williams*, *Kracht* and *Singer* cases on page 8 of

their memorandum of law, is misplaced, as in those cases there is no indication

that the police had information questioning the validity of the complaint made or

of the defendant's violation of a criminal charge. In *Williams*, the police officers

witnessed the behavior and refusal of the plaintiff to allow his tenant back into his

residence. There is no indication in the other cases that the police officers ignored

significant evidence, affecting the criminal charges, which formed the basis for the

arrest of the plaintiff. In the instant case, the police officers were in not possession

of blood as in the *Ricciuti* case or other similar evidence, which would have given

them a reasonable basis and probable cause to arrest the Plaintiff.

Police officers are only entitled to claim qualified immunity to escape

liability for civil damages only if their conduct does not violate the constitutional

rights of the plaintiff that a reasonable person would have recognized. It is

submitted that based on the facts and circumstances alleged by the Plaintiff in his

verified complaint, as amplified in his Affidavit in Opposition submitted herewith,

that a jury could conclude that officers of reasonable competence would not find

that probable cause exists. *McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006). A

police officer is unable to claim qualified immunity where there is bad faith or the

action taken without a reasonable basis. *Arteaga v. State of New York*, 72 N.Y.2d

212 (1988)

In addition, if it found that a police officer knowingly  forwarded

false evidence or false statements to the prosecution may constitute initiation of

proceedings for the purposes of a malicious prosecution claim, as may a police

officer's act of filing charges. *Ricciuti* supra; *Rothstein v. Carriere*, 373 F.3d 275

(2d. Cir. 2004); *Brown v. Sears Roebuck and Co.*, 297 A.D.2d 205 (1st Dept,

2002). Delayed disclosure of exculpatory evidence that might have affected a

19

prosecution qualifies as "initiating prosecution" under New York law. *Ramos v. City of New York*, 285 A.D.2d 284 (1st Dept, 2001). Intentional or reckless omissions of material information may serve as the basis for a malicious prosecution claim. *Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991).

There can be doubt that the malice element, is firmly established in the instant case based on the lack of probable cause for Plaintiff's arrest. Under New York law, "malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served," and malice may be inferred from the lack of probable cause *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *Roswell Martin v. City of Albany*, 42 N.Y.2d 13, (1977), *Boyd* supra.

In the instant case the following facts militate against a finding that the Defendants lacked probable cause to arrest Plaintiff on October 27, 2008. Thus, the issue of probable cause is a question of fact for a jury, and not a question to be resolved on a motion to dismiss. The Defendant's contention that probable cause existed merely because Plaintiff's ex-wife made a complaint defies common sense and is merely a conclusory utterance in an effort to justify an unreasonable and

20

unlawful seizure and considering the facts and circumstance known to the officer, does not warrant a finding of probable cause. With no further specificity, it is really no different from an officer's bold assertion that he has "reason to believe" an individual has committed a crime. See, *Nathanson v. United States*, 290 U.S. 41 (1933) (police affidavit that "he has cause to suspect and does believe" information does not establish probable cause); *Aguilar v. Texas*, 378 U.S. 108, (1964) (an officer's affidavit that he "received reliable information from a credible person and believes" that heroin is stored in a home, was found to be inadequate). A police officer cannot rely solely on a complaint from a complainant, jump to a conclusion and operate in a vacuum, when the facts and circumstances, at best warrant further investigation and at best is "almost" probable cause, which is not to be misunderstood to mean "arguable" probable cause. *Jenkins* supra..

Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. *Lowth* supra, *Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003). The failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause. *Colon* supra.

A police officer's filing of charges or knowingly forwarding false evidence or false statements to the prosecution may constitute initiation of

21

proceedings for the purposes of a malicious prosecution claim, as may a police officer's act of filing charges. *Ricciuti* supra, *Rothstein* supra and *Brown* supra

The Fourth Amendment protects individuals from a sustained detention caused by police officers' refusal to investigate available exculpatory evidence. *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007). Delayed disclosure of exculpatory evidence that might have affected a prosecution qualifies as "initiating prosecution" under New York law. *Ramos* supra. Intentional or reckless omissions of material information may serve as the basis for a malicious prosecution claim. *Golino* supra. The police may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause. *Gisondi v. Town of Harrison*, 72 N.Y.2d 280, 285 (1988) (police may be liable for withholding evidence where "discrepancies are so substantive that failure to disclose them would be comparable to fraud or perjury.")

A jury, considering the facts and circumstances of Plaintiff's arrest, imprisonment and prosecution can also reasonably infer maliciousness on the part of the Defendants. Under New York law, "malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served," and malice may be inferred from the lack of

22

probable cause *Lowth* supra, *Roswell* supra and *Boyd* supra. Actual malice is

seldom established by direct evidence, particularly where the parties are strangers

to each other at the time the criminal proceeding is initiated; in such cases, a

finding of actual malice depends largely upon inferences to be reasonably drawn

from the surrounding facts and circumstances. *Roswell*, supra at 16.

## ARGUMENT
### POINT III

**PLAINTIFF STATES A VALID FOURTH CAUSE OF ACTION AGAINST DEFENDANTS PURSUANT TO 42 U.S.C §1983 FOR VIOLATION OF HIS CIVIL RIGHTS, WHEREIN, IN ADDITION TO HIS STATE CLAIMS, HE ALLEGES THAT HIS CIVIL RIGHTS WERE VIOLATED BECAUSE OF HIS GENDER.**

In Plaintiff's Fourth Cause of Action, in addition to other violations

of his civil rights, Plaintiff alleges that the Harrison Town Police Department

violated Plaintiff's civil rights, due process rights and rights of equal protection,

by summarily and without cause, rejecting and refusing to even investigate

Plaintiff's complaints of harassment, contempt and stalking, which Plaintiff made

on three (3) different dates, to wit, October 21, 2006, October 22, 2006 and

October 23, 2006  against Plaintiff's ex-wife Defendant Deborah Gierszewski.

Plaintiff further alleges in his verified complaint that the Defendant's failure to

investigate his claims but was motivated by the fact that he was male. Plaintiff also

alleges in his verified complaint, Plaintiff alleges that complaints of domestic

violence made by men are routinely rejected and not investigated. In his Affidavit

in Opposition, submitted herewith, Plaintiff alleges that he was told that the

Harrison Police Department does not arrest mothers for complaints similar to the

ones that Plaintiff filed against his ex-wife. In addition, it is submitted that the

Defendant's arrest of Plaintiff for violation of the Westchester County Family

Court Order, provides additional substantiation to this complaint, in light of the

fact that there was no probable cause to arrest and imprison based on his ex-

wife;'s complaint, yet more serious complaints made by Plaintiff were summarily

ignored by the Harrison Police Department. Plaintiff submits that he has properly

alleged that the violation of his constitutional rights resulted from a custom or

policy. A custom or practice may be established by reference to a single incident if

Plaintiff is able to show that I) the policy itself is unconstitutional and ii) it was the

direct cause of the constitutional violation. *Monell v. Dept. of Social Services*, 436

U.S. 658 (1978), *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) Plaintiff should be

permitted to conduct discovery regarding the foregoing claims.

## CONCLUSION

By reason of the foregoing, Plaintiff respectfully requests that

Defendant's motion to dismiss his complaint be denied in its entirely, and/or

alternatively Plaintiff be permitted to replead some or all of the causes of action in

his complaint and that Plaintiff have such other and further relief as may be just.

Dated: Brooklyn, NY          Respectfully submitted,
       March 29, 2008

                             BERNSTEIN & JAFFE, ESQS.
                             Attorneys for Plaintiff
                             189 Montague Street, Suite 303
                             Brooklyn, New York 11201
                             (718) 875-7900
                             By: _____
                                 STEVEN C. BERNSTEIN, ESQ. (SCB0915)