```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                                 08 Civ. 0084 (WCC)
ALAN RHEINGOLD,                          :
                                                    ECF CASE
                     Plaintiff,          :

          - against -                    :          OPINION
                                                    AND ORDER
HARRISON TOWN POLICE DEPARTMENT,         :
HARRISON POLICE OFFICER J. PARRELLO,
TOWN/VILLAGE OF HARRISON and DEBORAH     :
RHEINGOLD a/k/a DEBORAH GIERSZEWSKI,
                                         :

                     Defendants.         :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                            BERNSTEIN & JAFFE, ESQS.
                            **Attorneys for Plaintiff**
                            189 Montague Street, Suite 303
                            Brooklyn, New York 11201

STEVEN C. BERNSTEIN, ESQ.

       Of Counsel

                            FRIEDMAN, HARFENIST, LANGER & KRAUT
                            **Attorneys for Defendants**
                              Harrison Police Officer J.
                              Parrello and Town/Village of
                              Harrison
                            3000 Marcus Avenue, Suite 2E1
                            Lake Success, New York 11042

CHARLES H. HORN, ESQ.

       Of Counsel

*Copies E-Mailed to Counsel of Record*

**Conner, Sr. D.J.:**

Plaintiff, Alan Rheingold, brings this action under 42 U.S.C. § 1983 against defendants Harrison Town Police Department;[1] Harrison Police Officer J. Parrello ("Parrello"); the Town/Village of Harrison (the "Town") and Deborah Rheingold a/k/a Deborah Gierszewski ("Gierszewski"), alleging that defendants violated his rights under the Fourth Amendment of the United States Constitution and New York law when they falsely arrested, falsely imprisoned and maliciously prosecuted him.  He also claims that defendants violated his civil rights under the Fourteenth Amendment of the United States Constitution by discriminating against him on the basis of his gender.  Parrello and the Town moved to dismiss the claims against them pursuant to FED. R. CIV. P. 12(c).  For the following reasons, defendants' motion is granted.

## BACKGROUND

Plaintiff alleges the following in his Complaint.

Defendant Gierszewski is plaintiff's ex-wife and for many years was involved in custody proceedings against plaintiff in Kings County, New York. (Complt. ¶ 6.)  On October 19, 2006, Gierszewski initiated a family-offense proceeding against plaintiff in Westchester County Family Court, despite directions from Kings County Supreme Court Justice Michael Ambrosio and Kings County Judicial Hearing Officer Leon Deutsch not to initiate proceedings against plaintiff in any other county.  (*Id*. ¶ 7.)  The Westchester County Family Court issued an order on October 19, 2006, modifying plaintiff's parenting time with his two children from alternate weeks to weekdays after

---

[1] In an Order dated February 18, 2008, this Court dismissed with prejudice the claims against the Harrison Police Department.

school until 8:30 p.m. (*Id.* ¶ 8.) Plaintiff claims the October 19 order was based on misrepresentations by Gierszewski. (*Id.*)

On October 27, 2006, based upon a complaint by Gierszewski that plaintiff violated the Westchester County Family Court order when plaintiff returned his children at 8:50 p.m. instead of the directed time of 8:30 p.m., plaintiff was arrested by Parrello and charged with criminal contempt in the second degree. (*Id.* ¶ 10.) Plaintiff protested his innocence to Parrello, begged them to investigate the allegations of contempt made by Gierszewski and provided them with written documentation that the order had not been violated. (*Id.* ¶ 11.) Plaintiff alleges defendants failed and refused to investigate the validity of the complaint made by Gierszewski and that there was no basis to arrest him. (*Id.* ¶¶ 12-13.) Plaintiff also alleges that he was falsely imprisoned and in custody in the detention cell of the Harrison Police Department. (*Id.* ¶ 14.)

On November 3, 2006, plaintiff was falsely and maliciously charged with criminal contempt in the second degree, without probable cause, before a judge of the Town Court of Harrison, County of Westchester. (*Id.* ¶ 41.) As a result of the false arrest and imprisonment he was forced to spend $5,000 to retain counsel to defend him against the false charges and was caused to appear on eight occasions in the Harrison Town Court. (*Id.* ¶ 16.) On August 3, 2007, the criminal charges against plaintiff were dismissed. (*Id.* ¶ 43.) Plaintiff claims that his false arrest, imprisonment and prosecution resulted from the municipal defendants' careless and negligent hiring, training and supervising of Parrello. (*Id.* ¶ 30.) Plaintiff further alleges that defendants refused to investigate or accept his complaints of harassment, contempt and stalking against Gierszewski, made to defendants on October 21 and 22, 2006, and mocked him and refused to investigate the basis for Gierszewski's allegations against him on October 27, 2007. (*Id.* ¶¶ 33-34.) Plaintiff claims that defendants' actions

were gender discriminatory because defendants regularly pursue complaints of domestic violence made by females but reject and refuse to investigate similar complaints made by males. (*Id*. ¶¶ 35, 37.)

Plaintiff served the municipal defendants with a Supplemental Notice of Claim on August 29, 2007. (*Id*. ¶ 18.) Plaintiff filed this Complaint in the Supreme Court of New York, County of Westchester, on October 25, 2007. Plaintiff filed claims under New York and federal law for false arrest, false imprisonment and malicious prosecution, as well as a claim of gender discrimination under federal law. Defendants Parrello and the Town removed the action to this Court on January 4, 2008.

## DISCUSSION

### I. Legal Standard

"In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (internal citations omitted). A motion brought under FED. R. CIV. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). In assessing the legal sufficiency of a claim, the Court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated

in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

**II.     False Arrest**

A claim for false arrest, resting on the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a claim for false arrest under New York law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).[2] Under New York law, to establish a cause of action for false arrest, the plaintiff must show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456, *cert. denied*,

---

[2] Plaintiff also states a claim for false imprisonment. "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972)).

423 U.S. 929 (1975); *see Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, . . . whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (citing *Broughton*, 37 N.Y.2d at 458; internal quotation marks and citation omitted).

Probable cause to arrest exists when an officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citing *Weyant*, 101 F.3d at 852); *see Singer*, 63 F.3d at 119. The evidence required to establish probable cause to arrest "need not reach the level of evidence necessary to support a conviction, . . . but it must constitute more than rumor, suspicion, or even a strong reason to suspect." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (internal quotation marks and citation omitted). For this motion, we must determine whether Officer Parrello had knowledge or reasonably trustworthy information of sufficient facts and circumstances to warrant arresting plaintiff for criminal contempt in the second degree, pursuant to New York Penal Law § 215.50(3).

Under New York law, a person is guilty of criminal contempt in the second degree when he wilfully disobeys a clear and definite court order. *See* N.Y. PENAL LAW 215.50(3); *Holtzman v. Beatty*, 97 A.D.2d 79, 82 (2d Dep't 1983). The Complaint states that a Family Court order issued on October 19, 2006 gave plaintiff visitation rights weekdays after school until 8:30 p.m. The Complaint also states that on October 27, 2006 Gierszewski made a complaint to the police that plaintiff violated this order when he returned his children at 8:50 p.m. Plaintiff was then arrested and charged with criminal contempt in the second degree. Based on these allegations, Parrello had probable cause to charge plaintiff with criminal contempt in the second degree for violating the October 19, 2006 order.

Parrello could rely on Gierszewski's complaint because he had no reason at the time to doubt the veracity of her statement that plaintiff violated the order by returning the children at 8:50 p.m. instead of 8:30 p.m. "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119; *see also Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002); *Williams v. City of New York*, 208 A.D.2d 919, 920 (2d Dep't 1994).

Plaintiff argues that there was no probable cause to arrest him. (Pl. Mem. Opp. Mot. Dismiss at 15.) He argues that the October 19, 2006 order was not clear as to the location where he was to return the children and that based on the vagueness of the order it cannot be shown that he had a deliberate intention to violate it. (*Id*.) He also argues that returning his children twenty minutes late does not express an intent to violate the order, and that the officers had no reason to believe that the incident was anything other than an isolated event. (*Id*. at 16.) However, the order is clear and unequivocal that the plaintiff must "return the children at 8:30 p.m. at the conclusion of each visit." (Rheingold Aff., Ex. 1.)

As to whether returning the children twenty minutes late expressed an intent to violate the order, which is an element for establishing whether plaintiff is guilty of criminal contempt in the second degree; here, the arresting officer need not make any decisions or conclusions about plaintiff's intent beyond the observation that plaintiff knew about the order and was in violation of it at the time of the arrest. For the purpose of establishing probable cause to arrest, that is enough. *See Krause v. Bennett*, 887 F.2d 362, 370 (2d Cir. 1989); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (standard for probable cause requires only the probability of criminal activity,

6

not a showing of evidence beyond a reasonable doubt or a demonstration that it is more probable than not an offense has been committed); *Mars v. City of New York*, 2002 WL 83697, at *1 (Sup. Ct. Jan. 8, 2002).

 Whether probable cause existed may be determined as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or it may require a trial if the facts are in dispute. *See Weyant*, 101 F.3d at 852. Plaintiff argues that there are factual issues precluding a finding of probable cause. He argues that on October 27, 2007 he had agreed on an alternative plan with Gierszewski, confirmed in a letter from Gierszewski's lawyer, that Gierszewski would pick the children up at 8:30 p.m. (Pl. Mem. Opp. Mot. Dismiss at 4.) He alleges that Gierszewski did not come to pick up the children and, after receiving a call from her, he drove the children to her home. (*Id*.) Plaintiff alleges that when the police arrived at his home that night he had his attorney speak to them to explain the arrangements and he showed them the letter from Gierszewski's attorney. (*Id*. at 5.) He also alleges that his attorney advised the officers that the October 19 order does not specify the location where the children are to be returned and that the order permitted the parties to make other arrangements. (*Id*.) Plaintiff states that he protested his innocence to the officers and begged them to question Gierszewski's attorney or Gierszewski to verify the arrangements. Plaintiff states that the officers looked at his documents but refused to investigate the complaint made by Gierszewski and refused to speak to her attorney. (*Id*. at 5-6.)

 Plaintiff argues that based on these circumstances "a reasonable police officer, would have conducted a limited investigation at [p]laintiff's home or upon arrival at the Harrison Police Department, and contacted and confronted Ms. Gierswewski [sic], or her attorney, as to any questions or concerns that the police officer may have had regarding the purpose, meaning and authenticity of

the letter of [Gierszewski's attorney], dated October 27, 2006." (*Id*. at 17.)  Plaintiff also argues that a reasonable officer would have issued a desk appearance ticket and conducted a limited investigation and would have then voided plaintiff's arrest and withdrawn the criminal complaint once the officer confirmed plaintiff did not violate the order.  (*Id*. at 18.)

These allegations are not contained in the Complaint.  *See Dangler*, 193 F.3d at 138 (deciding a motion to dismiss, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference).  However, even considering these allegations now, we determine that defendants had probable cause as a matter of law to arrest plaintiff for criminal contempt in the second degree.

Plaintiff's expectations of what a reasonable police officer would have done under the circumstances are not reasonable considering the unfair burden it would place on the officers.  "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause*, 887 F.2d at 372.  What plaintiff proposes would require the officer to sit as prosecutor, judge and jury; it is not the officer's duty to investigate plaintiff's professed innocence, weigh the evidence presented and make a determination as to whether he, in fact, violated a valid court order.  *See Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, . . . and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.") (internal quotation marks and citation omitted); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).

Based on Gierszewski's complaint, Parrello had probable cause to arrest plaintiff.  Even if

8

Gierszewski misinformed the officers as to the arrangements for that day, a valid court order was in effect which plaintiff knew about and which he violated by returning the children twenty minutes late. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Rizzo v. Edison, Inc.*, 172 Fed. App'x 391, 393 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Miloslavsky*, 808 F. Supp. at 355 ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.") (citing *Adams v. Williams*, 407 U.S. 143, 146-47 (1972)).

In *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001), the plaintiff argued that there was no probable cause because the conflicting accounts of the incident from him and the complaining parties should have prompted a more thorough investigation by the arresting officer. The Second Circuit stated that it has "found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee." *Id*. The court also noted that it "rejected an argument similar to that made by [the plaintiff] in *Ricciuti* [*v. New York City Transit Authority*, 124 F.3d 123 (2d Cir. 1997)] where an arresting officer chose to believe the claimed victim's account of a fight based on his visible injuries, notwithstanding the alleged assailant's cries of innocence." *Curley*, 268 F.3d at 70. The court noted that an officer need not prove the plaintiff's version of the events wrong before arresting him, nor does it matter that an investigation may have cast doubt upon the basis for the arrest. *Id*. Therefore, it is established in this Circuit that "'[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Id*. (quoting *Ricciuti*, 124 F.3d at 128) (alteration in original).

Based on the undisputed facts, and considering plaintiff's other allegations, we conclude that

it was objectively reasonable, as a matter of law, for Parrello to believe that plaintiff wilfully disobeyed a valid court order, and therefore there was probable cause to arrest him.

### III.    Malicious Prosecution

"A cause of action for malicious prosecution in New York has four elements: (1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing *Broughton*, 37 N.Y.2d at 457). A malicious prosecution claim under § 1983 is also governed by New York law. *See Conway v. Vill. of Mount Kisco, N.Y.*, 750 F.2d 205, 214 (2d Cir. 1984). "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992) (holding that dismissal pursuant to the state accelerated pretrial rehabilitation program was not a termination in favor of the accused for purposes of a civil rights suit); *see Miloslavsky*, 808 F. Supp. at 355 (determining an adjournment in contemplation of dismissal did not constitute a termination in a complainant's favor).

"Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." *Fulton*, 289 F.3d at 196; *Murphy v. Lynn*, 118 F.3d 938, 948-49 (2d Cir. 1997). The court in Fulton noted that the following outcomes were not considered sufficiently favorable to the accused to be indicative of innocence: dismissals for lack of subject matter jurisdiction, for failure to allege sufficient facts to support the charge or by the prosecution in

the interests of justice; adjournments in contemplation of dismissal; and abandonment of prosecution that is the result of a compromise to which the accused agreed, an act of mercy requested or accepted by the accused or misconduct by the accused. *Id*.

According to the Certificate of Disposition from the Harrison Town Court, Criminal Part, the charge of criminal contempt in the second degree under New York Penal Law § 215.50 against plaintiff was dismissed on August 3, 2007. (Rheingold Aff., Ex. 4.) Plaintiff has failed to state a cause of action for malicious prosecution because he does not and apparently cannot allege that he was found innocent in the criminal action.

### IV.     Qualified Immunity

This Court, having concluded that probable cause existed for plaintiff's arrest, need not reach the issue of qualified immunity. Nevertheless, we note that police officers enjoy a qualified immunity from damage suits arising out of their official conduct. *See Anderson v. Creighton*, 483 U.S. 635, 639-41 (1987). "The relevant question . . . is . . . whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Id*. at 641. The defense of qualified immunity is established when (1) at the time defendants acted, it was unclear whether plaintiff's asserted interests were protected by federal law, or (2) defendants could have reasonably believed that their actions did not contravene an established federal right. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 531-32 (2d Cir. 1993); *Dukes v. City of New York*, 879 F. Supp. 335, 344 (S.D.N.Y. 1995). Because we determined that it was objectively reasonable for Parrello to believe that probable cause existed, he is immune from liability under § 1983 on the ground of qualified immunity. *See, e.g., Boyd v. City of New York*, 336 F.3d 72,

11

76 (2d Cir. 2003) (holding that, if police officers of reasonable competence could disagree as to whether there was probable cause, there is "arguable" probable cause sufficient to warrant qualified immunity for the defendant officers); *Welch v. City of New York*, 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997) (determining arresting officer had no duty to review papers which the defendant claimed had bearing on the validity of the complainant, a review which was essentially a judicial function, and finding that officer was entitled to the protection of qualified immunity on the claim of false arrest and false imprisonment).

## V.     Equal Protection

The Equal Protection Clause requires that the government treat all similarly situated people alike. *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Plaintiff alleges that defendants violated his rights of equal protection when they failed to investigate his complaints of harassment, contempt and stalking against Gierszewski in 2006 because he was a male, and that defendants routinely reject and fail to investigate complaints of domestic violence made by men but not women. (Pl. Mem. Opp. Mot. Dismiss at 23-24.)

To prevail on a claim of selective enforcement, plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Harlen Assocs.*, 273 F.3d at 499 (quoting *LaTrieste Rest. & Cabaret v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). Plaintiff has sufficiently stated an Equal Protection claim to survive this motion.  Plaintiff alleges that

he was situated similarly to Gierszewski in that he made a contempt complaint against her in 2006 and she made a contempt complaint against him in 2007. He also alleges that defendants arrested him based on Gierszewski's complaint in 2007 but refused to investigate and accept his complaints against Gierszewski in 2006. He alleges that this differential treatment was based on his gender. Plaintiff has given defendants notice of the basic events and circumstances of his Equal Protection claim. However, in order to hold a municipality liable for a constitutional violation by its employee, a plaintiff must also allege that the violation was the result of a municipal custom or policy.

Defendants argue that plaintiff's claim against the Town should be dismissed, however, for failure to allege any evidence of a custom or policy resulting in the constitutional violation. (Defs. Mem. Supp. Mot. Dismiss at 13-14.) Defendants also argue that a single incident alleged in a complaint is not enough to establish the existence of a custom or policy, particularly if the incident involves only officials below the policy making level. (*Id*. at 14.) Defendants rely on *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993).

Section 1983 imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). A municipality may be liable for a constitutional violation inflicted by its employees or agents when the injury is a result of the execution of a government's policy or custom. *Id.* at 694. The Second Circuit held in *Dwares* that in order to hold a municipality liable under section 1983 for the conduct of employees below the policymaking level, plaintiff cannot merely assert a custom or policy in the absence of allegations of fact tending to support such an inference. 985 F.2d at 100. Similarly, the simple recitation that there was a failure to train municipal employees or a single incident alleged in a complaint does not suffice to allege that a municipal

13

custom or policy caused the plaintiff's injury. *Id*.

However, these standards are no longer appropriate in light of the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). The Supreme Court held that a federal court may not apply a "heightened pleading standard" in civil rights cases alleging municipal liability under section 1983. *Id*. The Court specifically rejected the argument that a plaintiff must do more than plead a single instance of misconduct to establish municipal liability under section 1983. *Id*. at 167. Courts in this district have analyzed *Monell* claims using the standard set forth in *Leatherman*. *See Javid v. Scott*, 913 F. Supp. 223, 230-31 (S.D.N.Y. 1996) (Conner, J.) (noting that *Dwares* standard was no longer appropriate after *Leatherman*); *see also Cooper v. Metro. Transp. Auth.*, 2006 WL 1975936, at *3 (S.D.N.Y. July 14, 2006).

Applying *Leatherman*, however, we determine that plaintiff has failed to allege a custom or policy to establish municipal liability under section 1983. Plaintiff's Fourth Cause of Action alleging an Equal Protection claim does not mention the Town at all other than the statement that defendants pursue complaints of domestic violence by females and refuse to investigate complaints by males. Even a liberal reading of this allegation does not establish that defendants pursued complaints of domestic violence in a discriminatory manner based on Town custom or policy. Additionally, plaintiff's selective enforcement claim must allege that he was treated differently than similarly situated individuals. *See Sebold v. City of Middletown*, 2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007) ("In order to state a selective enforcement claim, a plaintiff must present evidence comparing herself to individuals that are 'similarly situated in all material respects.'") (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Even if we were to read this allegation as

14

sufficient to state a plausible claim that the Town enforces domestic violence laws in a selectively discriminatory manner, plaintiff was not arrested for domestic violence; therefore, this allegation in the Complaint is irrelevant to his claim.  His selective enforcement claim is based on the allegation that defendants selectively enforce contempt complaints, specifically that defendants arrested him pursuant to Gierszewski's contempt complaint but failed to investigate his prior contempt complaint against Gierszewski.  Nowhere in the Fourth Cause of Action is it alleged that this was done pursuant to a municipal custom or policy or that it was the result of a failure to properly train or supervise.

Plaintiff alleges a Third Cause of Action that municipal defendants carelessly and negligently hired, trained and/or supervised Parrello and that this resulted in the arrest, imprisonment and prosecution of plaintiff.[3]  However this cause of action does not state that the alleged negligent hiring, training or supervising resulted in Parrello selectively enforcing the contempt laws against plaintiff based on his gender in violation of plaintiff's constitutional rights.  Even reading the Complaint in the light most favorable to plaintiff and applying the liberal pleading standards of *Leatherman*, we conclude that plaintiff fails to state a plausible claim that he was deprived of equal protection as a result of a Town policy or custom.  *See McCray v. City of New York*, 2007 WL 4352748, at *26-27 (S.D.N.Y. Dec. 11, 2007) (applying *Leatherman* the court dismissed the plaintiffs' *Monell* claims because although the plaintiffs enumerated offensive policies or customs, they failed to allege facts

---

[3] To the extent that plaintiff is alleging an alternate theory of liability for false arrest, imprisonment and prosecution sounding in negligence, New York does not provide a cause of action under such a theory.  A plaintiff may seek recovery only through the traditional tort remedies of false arrest, false imprisonment and malicious prosecution.  *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution.") (citing *Boose v. City of Rochester*, 421 N.Y.S.2d 740, 743 (4th Dep't 1979); *see Regent v. Town of Cheektowaga*, 2007 WL 981771, at *10 (W.D.N.Y. Mar. 30, 2007).

that sufficiently state a plausible claim); *Perez v. Westchester County*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (determining that plaintiff's claim provided no notice concerning the nature of the policy or custom under which defendants' actions were allegedly taken and therefore, even under the liberal notice pleading standard set forth in *Leatherman*, the complaint failed to adequately allege a policy or custom). *But see Cortlandt v. Westchester County*, 2007 WL 3238674, at *9 (S.D.N.Y. Oct. 31, 2007) (the plaintiff's allegation that the County had or passively approved a policy permitting its Adult Protective Services to improperly and in a grossly negligent manner use the Mental Hygiene Law to seize and institutionalize elderly citizens coupled with the particular example of the plaintiff's seizure and commitment to the Hospital and the inferences that may be drawn therefrom gave fair notice of plaintiff's municipal policy claim); *Hall v. Marshall*, 479 F. Supp. 2d 304, 316 (E.D.N.Y. 2007) (plaintiff satisfied *Leatherman* standard by alleging that the City had a practice, policy and custom of failing to properly train, supervise and monitor officer conduct and practices to effectuate deprivation of liberty by preparing harmfully inaccurate and ambiguously phrased reports and that the policy resulted in an inaccurate pre-sentence report which, despite plaintiff's objections, remained inaccurate at the time he was considered for parole).

     The Court has considerable sympathy for plaintiff, who returned his children to their mother, his estranged wife, only 20 minutes beyond the end of his period of custody set by a court, and who claims that he had agreed with his wife that she would pick them up but failed to do so and called to ask him to bring them to her home. If that claim is true, his wife has grievously wronged him and he may have a valid cause of action against her. But he has no viable claim against the arresting officer who had no reason to question the veracity of her complaint. Although common sense might have suggested that the officer exercise his discretion and attempt to persuade the wife that the brief and

apparently isolated delay in returning the children did not justify arresting plaintiff and subjecting him to considerable inconvenience, embarrassment and expense. But a deficiency in compassion, however regrettable, is not actionable.

## CONCLUSION

For all of the foregoing reasons, the defendants J. Parello and the Town/Village of Harrison's motion to dismiss is granted.

SO ORDERED.

Dated: White Plains, New York
       July 18, 2008

*William C. Conner*
Sr. United States District Judge
